562 S.E.2d 488

Scott James FEATHERS, D.P.M.,
Petitioner Below, Appellant,

v.

The WEST VIRGINIA BOARD OF
MEDICINE, Respondent
Below, Appellee.

No. 29634.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 3, 2001.

Decided Nov. 28, 2001.

98

J. Fox DeMoisey, DeMoisey & Smither, Louisville, KY, C. Page Hamrick, III, Charleston, WV, Attorneys for the Appellant.

Deborah Lewis Rodecker, Charleston, WV, Attorney for the Appellee.

STARCHER, Justice.

In this appeal from the Circuit Court of Kanawha County, an appellant sought a writ of prohibition from the circuit court to quash an administrative subpoena duces tecum issued by a state agency. The appellant contends that an administrative subpoena cannot be issued without the state agency first making a specific determination that probable cause exists to believe a statute or regulation has been violated. The appellant challenged the subpoena primarily because the agency made no probable cause determination that the appellant had engaged in any wrongdoing.

The circuit court denied the requested writ of prohibition. As set forth below, we affirm the circuit court's decision.

## I.

### Facts & Background

Appellant Scott James Feathers is a practicing podiatrist with offices in Parkersburg and Hurricane, West Virginia. Dr. Feathers is subject to regulation by the appellee, the West Virginia Board of Medicine ("Board"). In the instant case, the Board is investigating whether Dr. Feathers has engaged in misconduct under the West Virginia Medical Practice Act, *W.Va.Code*, 30-3-1 to -17.

The Board's regulations, enacted pursuant to the Medical Practice Act,[1] state that it may discipline a physician or podiatrist who

---

1. *W.Va.Code*, 30-3-7(a)(1) [1980] authorizes the Board to "[a]dopt such regulations as are necessary to carry out the purposes of this article[.]"

has "[e]ngaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public or any member thereof[.]" 11 C.S.R. 1A.12.1.e [2001]. The regulations define "dishonorable, unethical or unprofessional conduct" as including "charging or collecting an excessive, unconscionable fee." 11 C.S.R. 1A.12.2.i [2001].[2]

A former patient of Dr. Feathers complained to the Board, alleging that Dr. Feathers had charged the patient and her insurance company an excessive fee. The Board investigated the patient's complaint, and had an informal conference with Dr. Feathers to discuss the patient's allegations.[3]

At that informal conference, Dr. Feathers presented the Board with a March 9, 2000 opinion letter prepared by a podiatrist at Dr. Feathers' request. The opinion letter stated that the podiatrist had reviewed the former patient's file to determine if Dr. Feathers had committed "any violation of the Medical Practice Act." The podiatrist had reviewed the patient's billing information, and concluded that:

. . . while Dr. Feathers' charges are more than the base charges that I see in my office and in my area of the state, these are Dr. Feathers' published charges and therefore there has not been any violation

that I can see from the standpoint of overcharging. . . . The total charges do amount to quite a bit of money; however, chronic heel pain can be extremely complicated and I have seen cases which involved much more financial drain on the insurance companies and patients than this particular case.

The Board determined that the podiatrist's statement that Dr. Feathers' charges were "more than the base charges that I see in my office and in my area of the state" led the Board to decide that further investigation was needed to determine if Dr. Feathers was charging his patients excessive fees.

On April 4, 2000, the Board issued a subpoena duces tecum to Dr. Feathers, directing that he provide certain documents to the Board. First, the Board requested "[c]opies of any and all written fee schedules and office billing procedure manuals." The parties agree that Dr. Feathers provided these documents to the Board.

Second, the Board sought "copies of the thirty (30) medical records randomly selected by the Board Investigator."[4] Dr. Feathers refused to produce these documents. On April 7, 2000, he filed a petition for a writ of prohibition with the circuit court to quash the subpoena duces tecum. Dr. Feathers contended that the Board had no authority to

2. 11 C.S.R. 12.2.i defines an "excessive, unconscionable fee" in the following manner:

Acts declared to constitute dishonorable, unethical or unprofessional conduct: As used in this rule at section 12.1.e, "Dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public or any member thereof" includes, but is not limited to: . . .
i. Charging or collecting an excessive, unconscionable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
A. The time and effort required;
B. The novelty and difficulty of the procedure or treatment;
C. The skill required to perform the procedure or treatment properly;
D. Any requirements or conditions imposed by the patient or circumstances;
E. The nature and length of the professional relationship with the patient;
F. The experience, reputation, and ability of the licensee; and
G. The nature of the circumstances under which the services are provided.

In any case where it is found that an excessive, unconscionable fee has been charged, in addition to any actions taken under the provisions of section 12.3 of this rule, the Board may require the licensee to reduce or pay back the fee[.]

3. The Board's regulations specifically provide doctors with a right to present their position at an informal meeting with the "complaint committee," the organization charged by the Board with investigating complaints. Statements made at the meeting are confidential and may not be used at any other hearing without the consent of all parties. *See* 11 C.S.R. 3.10.10 [2001].

4. The subpoena duces tecum required that Dr. Feathers produce, in pertinent part:

Complete copies of the thirty (30) medical records randomly selected by the Board Investigator. All charts selected should include but not be limited to the histories, Physician's notes, progress notes, operative reports, claim forms filed for the dates of service, history of the billing system, dates of service, diagnosis, billing codes and the explanation of benefits.

issue the subpoena, because the Board did not make a finding that there was probable cause to believe Dr. Feathers had violated the Medical Practice Act. Furthermore, Dr. Feathers argued that the Board simply wanted to engage in a "fishing expedition" through his files, violating his patients' right to privacy.

On June 21, 2000, the circuit court entered an order denying the requested writ of prohibition. The circuit court reasoned that the Board did not need probable cause to subpoena records as part of an investigation, and that the Board's regulations allowed the use of a subpoena to further any investigation by the Board when the subpoena would likely lead to admissible evidence. The circuit court also determined that a review of 30 patient records to determine if there were irregular billing practices would not amount to an unreasonable and oppressive request. Additionally, the circuit court found that the Board itself is charged with protecting a patient's right to the confidentiality of medical information contained in their medical file, and that a doctor cannot assert a patient's right to confidentiality to limit a legitimate investigation intended to benefit the public health. The circuit court therefore ordered Dr. Feathers to comply with the subpoena duces tecum.

Dr. Feathers then filed the instant appeal.

## II.

### Standard of Review

■ Dr. Feathers seeks a writ of prohibition to halt the enforcement of the Board's subpoena. "The rationale behind a writ of prohibition is that by issuing certain orders the trial court has exceeded its jurisdiction, thus making prohibition appropriate." *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 36, 454 S.E.2d 77, 81 (1994) (Cleckley, J., concurring). As such, "writs of prohibition ... provide a drastic remedy to be invoked only in extraordinary situations." 193 W.Va. at 37, 454 S.E.2d at 82.

■ There are five factors that a court will consider in determining whether it is appropriate to issue a writ of prohibition:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ We are asked to examine the Medical Practice Act and the Board's legislatively-approved regulations, and determine whether the Board is required to find probable cause exists to substantiate an allegation of misconduct, before the Board may subpoena records to investigate that allegation. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

With these standards in mind, we examine the appellant's contentions.

## III.

### Discussion

■ Through the passage of *W.Va.Code,* 30–3–7(a)(2) [1980], the Legislature gave the Board of Medicine the power to issue subpoenas. As we noted in *State ex rel. Hoover*

*v. Berger,* 199 W.Va. at 17, 483 S.E.2d at 17, the statute "places few restrictions on that power." The statute simply provides that "[ (i) ]n carrying out [its] functions, the board may: . . . (2) Hold hearings and conduct investigations, subpoena witnesses and documents and administer oaths. . . ." The parameters and constraints on the Board's power to issue subpoenas are to be found in the standards that courts have established to protect constitutional, statutory and common law rights and privileges. 199 W.Va. at 17, 483 S.E.2d at 17.

We made clear in *State ex rel. Hoover v. Berger* that an administrative subpoena duces tecum is not self-executing, but is a direction to produce documents subject to judicial review and enforcement. Thus, the subject or target of an administrative subpoena duces tecum may challenge the subpoena before yielding the information sought. Privileges, privacy rights and the unreasonableness of an administrative subpoena are available defenses when challenging the enforcement of the subpoena. *Id.*

We established in *State ex rel. Hoover v. Berger* five requirements that an agency must meet for the judicial enforcement of an administrative subpoena which are "tightly drawn, but are not onerous." *Id.* If these requirements are met, the subpoena is presumably valid and the burden shifts to the party opposing the subpoena's enforcement. We held at Syllabus Point 1 of *State ex rel. Hoover v. Berger* that:

> In order to obtain judicial backing for the enforcement of an administrative subpoena, the agency must prove that (1) the subpoena is issued for a legislatively authorized purpose, (2) the information sought is relevant to the authorized purpose, (3) the information sought is not already within the agency's possession, (4) the information sought is adequately described, and (5) proper procedures have been employed in issuing the subpoena. If these require-

ments are satisfied, the subpoena is presumably valid and the burden shifts to those opposing the subpoena to demonstrate its invalidity. The party seeking to quash the subpoena must disprove through facts and evidence the presumed relevance and purpose of the subpoena.

We made clear in *State ex rel. Hoover v. Berger* that these requirements apply to the Board of Medicine in the same way that they apply to subpoenas issued by other agencies.

If these five factors are satisfied in the instant case, the subpoena issued by the Board is presumptively valid, and the burden shifts to Dr. Feathers to disprove, through facts and evidence, the presumed relevance, purpose, and enforceability of the subpoena. We therefore examine the record presented below to determine if the circuit court correctly enforced the Board's subpoena.

The record is clear that the Board has met its burden on the first four requirements in Syllabus Point 1 of *State ex rel. Hoover v. Berger.* The subpoena was issued for a legislatively authorized purpose—to investigate Dr. Feathers' professional conduct. The 30 randomly selected files were sought to determine whether Dr. Feathers was "charging or collecting an excessive, unconscionable fee." Moreover, the Board correctly states that Dr. Feathers made his billing practices toward other patients an issue through his own expert's opinion that, as a general practice, Dr. Feathers' fees were more than the base charges of other podiatrists performing the same procedures. The information sought by the subpoena is not within the Board's possession. And finally, under the circumstances, the information sought has been adequately described.[5]

Dr. Feathers' arguments largely focus on the fifth requirement—whether proper procedures were employed by the Board in issuing the subpoena. Dr. Feathers as-

---

5. We do not consider the Board's request for 30 randomly chosen files as ambiguous because the record is unclear how many patient files Dr. Feathers has available for ready examination. His files may be stored at multiple locations (the record reflects he has two offices), might be arranged alphabetically or by some identifying number, and files of "inactive" patients may routinely be removed from the filing system for storage in another location. In this uncertain environment, allowing the Board's investigator to see the file storage method and choose particular files for examination using a random system does not seem particularly onerous.

serts that a prior finding of "probable cause" is necessary because, as we suggested in *State ex rel. Hoover v. Berger,* "without some meritorious justification, an administrative subpoena duces tecum is not some talisman that dissolves all rights and privileges of the citizens of this State." 199 W.Va. at 19, 483 S.E.2d at 19. Dr. Feathers argues that the Board—through a subcommittee known as the "Complaint Committee"—is required to find probable cause to believe there has been a violation of the law, before it can issue an investigative subpoena. Dr. Feathers cites to one of the Board's many regulations, which states:

> If the complaint committee determines that there is reason to believe that the acts alleged occurred and constitute a violation for which a licensee may be sanctioned by the Board, *the complaint committee shall find probable cause to believe there is a violation of the law or this rule.*

11 C.S.R. 3.10.14 [2001] (emphasis added).

The Board counters that the relevant statutes and regulations, read together, allow the Board to conduct an investigation and to use its subpoena power to determine whether any merit exists in a complaint. The Board argues that a "probable cause" determination can ordinarily be made only after an investigation has, to some degree, been conducted into the substance of the complaint. We agree with the Board's position.

██ Our reading of the statutes and regulations at issue suggests some ambiguity regarding when the Board must make a probable cause determination. However, "[i]t is not for this Court arbitrarily to read into [those statutes and regulations] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996).

*W.Va.Code,* 30–3–7(a)(2) empowers the Board to "[h]old hearings and conduct investigations, [and] subpoena witnesses and documents" in order to regulate the professional conduct of podiatrists—without making any requirement of a prior probable cause finding. Similarly, the Board's regulations, which have been approved by the Legislature, state that upon receiving a complaint, the Board may investigate the allegations in the complaint and issue subpoenas to complete that investigation—again, without any requirement of a prior probable cause finding.[6] It would be erroneous to read into these two enactments a probable cause requirement that is in fact conspicuously absent.

██ Furthermore, when regulations enacted by an agency have been legislatively approved, they have the force of statutes and are interpreted according to ordinary canons of statutory interpretation. *See HCCRA v. Boone Memorial Hospital,* 196 W.Va. 326, 472 S.E.2d 411 (1996). Enactments which relate to the same subject matter are to be construed consistently with one another. *See, e.g.,* Syllabus Point 1, *Owens–Illinois Glass Co. v. Battle,* 151 W.Va. 655, 154 S.E.2d 854 (1967).

██ The Board's regulations, read consistently with one another, set forth a procedure whereby the Board may exercise its subpoena power to investigate a complaint *before* making a probable cause determination. Under the regulations, in order to investigate the allegations in a complaint, the Board may conduct an informal meeting with the doctor targeted by the complaint,[7] or

---

6. The Board's regulations state, in pertinent part:
   After receipt and review of a complaint ... the complaint committee of the Board ... shall cause to be conducted any reasonable inquiry or investigation it considers necessary to determine the truth and validity of the allegations set forth in the complaint....
   11 C.S.R. 3.10.7 [2001].
   The complaint committee may request the Board to issue subpoenas and subpoena duces tecum as required to complete its investigation

and may utilize the Board investigator to conduct whatever investigations are necessary to determine the truth and validity, or lack thereof, of complaints....
11 C.S.R. 3.10.9 [2001].

7. *See* footnote 3, *supra,* whereby a doctor may request a person to "attend an informal conference" in order to "facilitate disposition of a complaint." 11 C.S.R. 3.10.10 [2001]. Dr.

may require the doctor to file a formal answer.[8] As part of this investigative process, the Board may use its subpoena authority. Once the Board completes its investigation of the complaint, the regulations allow the Board to take one of two actions: dismiss the complaint,[9] or find probable cause to believe there is a violation of the law [10] and proceed to a public hearing.[11] If the Board makes a determination that there is probable cause to believe a violation of the Medical Practices Act has occurred, all of the Board's proceedings become matters of public record. *W.Va. Code*, 30–3–14(p) [1999]. The Board must then promptly provide the doctor with information regarding potential witnesses, copies of statements held by the Board, and otherwise provide the doctor with discovery.[12]

Feathers participated in such an informal conference.

8. The Board's regulations, 11 C.S.R. 3.10.11 [2001], state in pertinent part:

If the complaint committee determines that a complaint complies substantially with [the requirements of the Board's regulations and the Medical Practice Act] ... it may request that the individual complained of ... respond to the complaint within thirty (30) days. The complaint committee shall attach a copy of the complaint to the order for response or shall describe the acts alleged in the complaint. A respondent may answer either personally or through his or her attorney, but the answer must address the substantive allegations set forth in the complaint or order.

9. The Board's regulations, 11 C.S.R. 3.10.12 [2001], state in pertinent part:

[A]t any point in the course of investigation or inquiry into a complaint, the complaint committee may determine that there is not and will not be sufficient evidence to warrant further proceedings or that the complaint fails to allege misconduct for which a licensee may be sanctioned by the Board. In that event, the complaint committee shall dismiss the complaint....

10. 11 C.S.R. 3.10.14, cited in the text by Dr. Feathers as supporting his position, requires that the complaint committee find probable cause.

11. The Board's regulations, 11 C.S.R. 3.10.15 [2001], state in pertinent part:

A hearing is required if it is determined that there is probable cause to believe that acts alleged occurred and may constitute a violation of any provision of law or this rule. The complaint committee may take such action as it determines a complaint warrants.

Once a probable cause determination found to exist, the Board is required to make all of its disciplinary proceedings public; if probable cause does not exist, then only the charges and findings of fact and conclusions of law supporting the dismissal become public. *W.Va.Code*, 30–3–14(p) [1999] states, in pertinent part:

In every case considered by the board under this article regarding discipline or licensure ... the board shall make a preliminary determination as to whether probable cause exists to substantiate charges of disqualification ... If such probable cause is found to exist, all proceedings on the charges shall be open to the public who shall be entitled to all reports, records, and nondeliberative materials introduced at the hearing, including the record of the final action taken[.]

See also, *Daily Gazette Co., Inc. v. W.Va. Board of Medicine*, 177 W.Va. 316, 352 S.E.2d 66 (1986) (under what was formerly *W.Va.Code*, 30–3–14(o)[1986], if probable cause exists to substantiate a charge, then "all proceedings on such charges shall be open to the public;" if probable cause does not exist, then "the public has a right of access to the complaint or other document setting for the charges, and the findings of fact and conclusions of law supporting the dismissal.")

12. *W.Va.Code*, 30–3–14(i) [1999] states:

In disciplinary actions in which probable cause has been found by the board, the board shall, within twenty days of the date of service of the written notice of charges or sixty days prior to the date of the scheduled hearing, whichever is sooner, provide the respondent with the complete identity, address, and telephone number of any person known to the board with knowledge about the facts of any of the charges; provide a copy of any statements in the possession of or under the control of the board; provide a list of proposed witnesses with addresses and telephone numbers, with a brief summary of his or her anticipated testimony; provide disclosure of any trial expert pursuant to the requirements of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure; provide inspection and copying of the results of any reports of physical and mental examinations or scientific tests or experiments; and provide a list and copy of any proposed exhibit to be used at the hearing. Provided, That the board shall not be required to furnish or produce any materials which contain opinion work product information or would be violative of the attorney-client privilege. Within twenty days of the date of service of the written notice of charges, the board shall be required to disclose any exculpatory evidence with a continuing duty to do so throughout the disciplinary process. Within thirty days of receipt

The argument posited by Dr. Feathers would, in essence, require that probable cause be found once a complaint is filed and before any other action could be taken by the Board. If we were to adopt Dr. Feathers' argument, the Board would be required to make a probable cause determination almost exclusively upon the complaint. Upon making a probable cause determination, all of the allegations in the complaint—whether supportable or not—would become matters of (potentially embarrassing) public scrutiny under *W.Va.Code*, 30–3–14(p). The Board would have to investigate the allegations in the complaint within—at most—20 days. Under Dr. Feathers' position, the Board would be permitted to investigate through the exercise of its subpoena power during this period, and would at the end of 20 days be required to identify those witnesses and exhibits that the Board will use in the hearing on the complaint. *See W.Va.Code*, 30–3–14(i). We do not believe the Legislature intended to put the medical community and the Board in such a potentially embarrassing and, perhaps, impossible situation.

■ Read together, the statutes and regulations governing the Board's disciplinary process clearly evince a system whereby the Board is permitted to conduct an investigation, and use its subpoena power as part of

that investigation, before making a finding of probable cause. A finding that probable cause exists to substantiate a complaint made under the Medical Practice Act is not a necessary prerequisite for the Board of Medicine to issue a subpoena or a subpoena duces tecum under *W.Va.Code*, 30–3–7(a)(2) [1980].

Dr. Feathers also contends that the Board's subpoena duces tecum is procedurally defective because it did not specifically exempt from its coverage the files of his patients who had submitted to HIV testing or the mental health records of his patients. Dr. Feathers asserts that information concerning the HIV-status and the mental health of patients is statutorily-protected information that cannot be obtained through an administrative subpoena.[13] In essence, Dr. Feathers contends that a patient file covered by the Board's subpoena *might* contain protected information—and therefore, the subpoena as a whole cannot be enforced. We disagree.

The Board's subpoena in the instant case does not specifically seek protected information regarding a patient's HIV status or mental health treatment. However, it is true that such protected information could come to light when a Board investigator probes through a patient's file.

of the board's mandatory discovery, the respondent shall provide the board with the complete identity, address, and telephone number of any person known to the respondent with knowledge about the facts of any of the charges; provide a list of proposed witnesses with addresses and telephone numbers, to be called at hearing, with a brief summary of his or her anticipated testimony; provide disclosure of any trial expert pursuant to the requirements of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure; provide inspection and copying of the results of any reports of physical and mental examinations or scientific tests or experiments; and provide a list and copy of any proposed exhibit to be used at the hearing.

13. *W.Va.Code*, 16–3C–3(a) [1998] states, in pertinent part:

No person may disclose or be compelled to disclose the identity of any person upon whom an HIV-related test is performed, or the results of such a test in a manner which permits identification of the subject of the test ...

*W.Va.Code*, 27–3–1(a) [1977] similarly restricts access to information regarding the mental health of a patient:

Communications and information obtained in the course of treatment or evaluation of any client or patient shall be deemed to be "confidential information" and shall include the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition; any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and any record or characterization of the matters hereinbefore described. It does not include information which does not identify a client or patient, information from which a person acquainted with a client or patient would not recognize such client or patient, and uncoded information from which there is no possible means to identify a client or patient.

The circuit court concluded that a doctor could not assert the privacy protections afforded to certain information in a doctor's files. We reject this conclusion. In circumstances such as that presented in this case, a doctor can act to protect the privacy interests of his patients. However, those privacy rights may be protected in a manner as set forth in *Hoover*—the doctor may specifically assert that information sought by subpoena or subpoena duces tecum is privileged under statute, but the doctor bears the burden of proving the information is privileged. As in other instances where a party asserts a privilege, a log of the privileged material should be provided to the Board of Medicine, and the materials provided to a court for *in camera* inspection. *See, e.g., State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992) (hospital sought to protect hospital peer review documents as statutorily privileged); *State ex rel. U.S.F. & G. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995) (insurance company sought to protect documents as attorney-client privileged). Only that material which is privileged is protected from examination.[14]

---

**14.** Various methods exist to protect sensitive patient information from unnecessary examination. For example, the information could be redacted from the disputed document or, as a last resort if necessary, the disputed document could be removed in its entirety from the patient's file.

## IV.

### *Conclusion*

After carefully examining the record below, we conclude that the circuit court did not err. Applying the five-part test set forth in Syllabus Point 1 of *State ex rel. Hoover v. Berger,* the Board of Medicine established a right to have its administrative subpoena judicially enforced, and Dr. Feathers failed to establish through the evidence that the subpoena duces tecum should be quashed. Nothing in the record supports the conclusion that the Board exceeded its jurisdiction in issuing the subpoena duces tecum.

We therefore affirm the circuit court's June 21, 2000 order, denying Dr. Feathers the requested writ of prohibition.

Affirmed.

Regardless of the method chosen, we still note that the Board is statutorily charged with protecting the confidentiality of sensitive patient information. "[T]he unlawful disclosure of confidential information possessed by the board is a misdemeanor[.]" *W.Va.Code,* 30–3–14(n) [1999].