602 S.E.2d 459

**STATE of West Virginia ex rel. Westfield Insurance Company, Petitioner,**

v.

**The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, West Virginia; Richard Hornbeck and Robert Litman d/b/a Litman Excavating, Respondents.**

**No. 31579.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 13, 2004.

Filed: Feb. 27, 2004.

Brent A. Kesner, Esq., Tanya M. Kesner, Esq., Ellen R. Archibald, Esq., Kesner, Kesner & Bramble, Charleston, for Petitioner.

Donald M. Kresen, Esq., Gold, Khourey & Turak, Moundsville, West Virginia, James W. Peters, Woodsfield, OH, for Respondent Hornbeck.

Jeffrey A. Grove, Esq., Paul T. Tucker, Esq., Bachmann, Hess, Bachmann & Garden, Wheeling, for Respondent Litman.

DAVIS, Justice.

This matter is here under the original jurisdiction of this Court. Westfield Insurance Company (hereinafter referred to as "Westfield"), petitioner/defendant below, seeks a writ of prohibition to prevent enforcement of an order from the Circuit Court of Marshall County. The circuit court's order required Westfield to produce allegedly privileged documents, as a discovery sanction, to Richard Hornbeck and Robert Litman, d/b/a Litman Excavating (hereinafter referred to as "Litman"), respondents/plaintiffs below. After a careful review of the briefs and listening to the oral arguments of the parties, the writ prayed for is hereby granted as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case originated from a 1998 action that was filed by Mr. Hornbeck against Litman.[1] Mr. Hornbeck was injured while working for Litman in October of 1997. Litman Excavating was insured by Westfield. However, Westfield filed a declaratory judgment action arguing that the policy did not cover the injury sustained by Mr. Hornbeck. As a result of Westfield's position on coverage, Litman retained personal counsel.[2] In 2002, Litman settled with Mr. Hornbeck. Subsequent to the settlement, Mr. Hornbeck and Litman initiated bad faith and unfair trade practices claims against Westfield.[3] While the bad faith claims were pending, the circuit court entered an order regarding Westfield's declaratory judgment action finding coverage existed for Mr. Hornbeck's claim against Litman.[4]

In pursuing their bad faith claims, Mr. Hornbeck and Litman filed discovery requests on Westfield. The discovery sought information from the file Westfield generated in the action against Litman (hereinafter referred to as the "A" tort file). The discovery also sought information in a file Westfield generated in the declaratory judgment action (hereinafter referred to as the "B" coverage file).[5] Westfield responded to the requests by asserting the attorney-client privilege, quasi attorney-client privilege, and work product doctrine. Mr. Hornbeck and Litman each filed motions to compel discovery and for sanctions. After a hearing on the motions, the circuit court entered an order on September 19, 2003, requiring Westfield to produce the "A" tort file and "B" coverage file as a sanction for asserting the attorney-client privilege, quasi attorney-client privilege, and work product doctrine in bad faith.[6] Westfield thereafter filed the instant prohibition action with this Court.

## II.

### STANDARD OF REVIEW

This Court has held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). Here, Westfield acknowledges that the circuit court has jurisdiction. However, Westfield claims that the court has exceeded its legitimate powers. We held in Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not

---

1. Mr. Hornbeck also sued Ohio Power Company. As a result of several settlements, Ohio Power is no longer a party to this litigation.

2. Although Litman retained personal counsel, Westfield also provided counsel for Litman. The record is not clear as to the role played by the attorney provided by Westfield, after Litman retained personal counsel.

3. The sparse record does not disclose exactly at what point the bad faith claims were filed.

4. Westfield filed a petition for appeal from this ruling, but later withdrew the petition.

5. Mr. Hornbeck contends that Mr. Litman signed a release giving him access to the "A" tort file. The circuit court's order indicates that such a release was obtained. However, Westfield contends that it has never been provided a copy of the release. The record in this proceeding did not contain the release. We do not decide the validity or invalidity of the release, but will note that under this Court's decision in *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998), an actual copy of the release must be provided to Westfield and the circuit court.

6. By previous sanction orders dated May 27, 2003, and May 30, 2003, the circuit court required a disclosure of the files. However, as a result of those two circuit court orders, Westfield filed a writ of prohibition with this Court seeking to stop enforcement of the orders. Thereafter, this Court entered a memorandum order dated July 2, 2003, requiring that the circuit court reconsider its disclosure order in light of the decisions in *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003), and *State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 584 S.E.2d 480 (2003). Upon reconsideration, the circuit court found that, *State ex rel. Brison* and *Medical Assurance* did not apply because it ordered disclosure of the files as a sanction pursuant to 37(b)(2).

involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Our cases have made clear that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, *State Farm v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992). Moreover, "[w]hen a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. pt. 3, *State ex rel. U.S.*

*Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995).

## III.

### DISCUSSION

The issue in this case is quite simple, even though the parties have attempted to convolute matters by interjecting issues that are not properly before this Court.[7] The sole issue before us is whether the circuit court applied the wrong legal standard in requiring Westfield to produce allegedly privileged documents as a sanction for responding to discovery requests in bad faith. We have held that "[u]nless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous." Syl. pt. 6, *State ex rel. U.S. Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). In fact, our case law has been very consistent with regard to the discovery process which must be utilized when producing privileged documents.

The general procedure involved with discovery of allegedly privileged documents is as follows. The party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure.[8] If the responding party asserts a privilege to any of the specific documents requested, the responding party should file a privilege log that "identif[ies] the document by name, date, custodian, source and reason

---

**7.** Westfield would have this Court determine that the principles set out in *State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 584 S.E.2d 480 (2003) (first-party bad faith action seeking litigation and claim files), *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003) (third-party bad faith action seeking claim file) and *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998) (third-party bad faith action seeking claim file under a release), apply to all of the documents requested in discovery. Insofar as the circuit court has not held an in camera proceeding to review the documents to determine whether the protections of *Brison, Medical Assurance* and *Gaughan* apply, we will not decide the matter. We also decline to address

Westfield's request that this Court prohibit Litman from disclosing to Mr. Hornbeck documents found to be discoverable by Litman in the "A" tort file. Westfield must make this request in the first instance to the circuit court.

**8.** The pertinent language in Rule 34(b) states:

> (b) Procedure. The request [for production] may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party. The request shall set forth, either by individual item or by category, the items to be inspected, and *describe each with reasonable particularity*. (Emphasis added.)

for creation." *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 729, 421 S.E.2d 264, 270 (1992). That is, "where a party asserts a privilege, a log of the privileged material should be provided to the [requesting party], and the materials provided to a court for in camera inspection." *Feathers v. West Virginia Bd. of Med.*, 211 W.Va. 96, 105, 562 S.E.2d 488, 497 (2001). *See also State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 629, 584 S.E.2d 480, 485 (2003) ("Following a hearing and an in camera review of the documents in question, the Circuit Court entered the order . . ., denying the petitioners' motion for a protective order and directing the petitioners to produce and disclose, in their entirety, the litigation file and the redacted portions of the claim file."); *Peters v. County Comm'n of Wood County*, 209 W.Va. 94, 97, 543 S.E.2d 651, 654 (2000) ("[T]he circuit court must review in camera whether the communications do indeed fall within the attorney-client privilege."); *Shroades*, 187 W.Va. at 724–25, 421 S.E.2d at 265–66 ("[T]he circuit court should have held an in camera examination to determine if the requested documents are privileged[.]"). If the party seeking privileged documents files a motion to compel, or the responding party files a motion for a protective order, "[t]he trial court must then make an independent determination for each communication the [responding party] seeks to shield from discovery." *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 373, 508 S.E.2d 75, 90 (1998).

■ Based upon the foregoing principles, we now hold that in an action for bad faith against an insurer, the general procedure involved with discovery of documents contained in an insurer's litigation or claim file is as follows: (1) The party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure; (2) If the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) The privilege log should be provided to the requesting party and the trial court; and (4) If the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

■ In our review of the briefs and limited record submitted, we conclude that critical points in the above general procedure were not followed. First, both Mr. Hornbeck and Litman made broad general requests for all documents contained in the "A" tort file and "B" coverage file. Westfield eventually responded by producing a privilege log that identified a total of 450 documents. Mr. Hornbeck and Litman thereafter filed motions to compel and to sanction Westfield. The position taken by Mr. Hornbeck and Litman was that the privilege log was too vague and that Westfield was asserting a claim of privilege for documents that were not privileged.[9]

A hearing was held on the motions on April 16, 2003. During the hearing, Litman produced a letter that he was privy to, which was also in the "A" tort file, and argued that the letter was not privileged. Therefore, Litman's counsel contended that Westfield acted in bad faith in asserting that it was privileged. In response to arguments that Westfield acted in bad faith in designating documents as privileged, when they were not, the circuit court made the following comments:

THE COURT: You know where I see Westfield right now? And the decision I'm going to make is whether to sustain Mr. Tucker's motion and, you know, strike your objections to turning over the material or whether I'm going to have to ask for it all to be looked at in-camera and then if

---

9. We should point out that as to the "A" tort file, Westfield indicated during the hearing before the circuit court that it asserted privileges to the request by Litman because of the fear that Litman would turn the documents over to Mr. Hornbeck. That is, Westfield was seeking a ruling that would shield the "A" tort file from use by Mr. Hornbeck.

I see that Mr. Tucker's suspicions are justified, if you have said that—a lot of things that the average lawyer would know aren't privileged are in there, then strike your answer. That's the quandary I see myself in right at this point.

Are you willing to take a chance on me going ahead and looking at the material and if I see that you said a lot of things were confidential and the average lawyer would know that there's no way they are, and I'd so find, that it might be proper for me to go ahead and strike your answer?

Counsel for Westfield did not expressly answer the trial court's question. Thereafter, the trial court entered two separate orders on May 27, 2003, and May 30, 2003, sanctioning Westfield for asserting privileges in bad faith. The orders clearly demonstrate that the circuit court made its decision based upon the representations of all counsel during the hearing. That is, the circuit court did not undertake an in camera review of the privilege log.

 It is quite obvious that the circuit court acted under an erroneous presumption that, when a party claims a privilege and files a privilege log, every document listed in the log must in fact be privileged to avoid sanctions. This presumption is legally wrong. The reason for an in camera review is to determine which, if any, of the documents alleged to be privileged are, in fact, privileged. *See Medical Assurance*, 213 W.Va. at 465, 583 S.E.2d at 88 ("Our review of the privilege log leads us to conclude that at least some of the documents sought by Respondent are probably protected by attorney-client privilege or the work product doctrine. Therefore, because of the probable invasion of confidential materials, this Court's original jurisdiction is appropriate."); *Gaughan*, 203 W.Va. at 364 n. 8, 508 S.E.2d at 81 n. 8 ("Allstate retained 137 documents from Mr. Mirandy's claim file. After an in camera review of the privilege logs on each of the documents retained, the circuit court ordered Allstate to produce 66 of the documents."). This Court will not adopt or approve of a rule which would allow a party to be sanctioned, in the manner done in this case, merely because some documents listed in a privilege log turn out not to be privileged.

After reviewing the record in this case, this Court is very aware of the circuit court's frustration. In fact, it is obvious that the circuit court was trying to resolve discovery matters when all parties to the litigation were polarized. None of the parties complied with our prior case law regarding how discovery requests and discovery production are to be handled when privileged documents are involved.

 Notwithstanding the circuit court's frustration, it was obligated to hold an in camera review of the privilege log and make an independent determination of the privilege status of each document. Alternatively, should the court deem it to be more expedient, the court may "appoint[ ] a special master to review the withheld documents in camera and to determine whether they were exempt from disclosure[.]" *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 198 W.Va. 563, 566, 482 S.E.2d 180, 183 (1996). Likewise, all fees and expenses relating to the special master may be assessed by the circuit court pursuant to Rule 37(a)(4). Here, the circuit court failed to make an independent determination or appoint a special master to review the documents. Instead, the circuit court ordered all the documents be produced because "some" of the documents may not have been privileged. As a result of the application of this incorrect legal standard, "we have no choice but to grant the writ of prohibition prayed for by the relator." *Medical Assurance*, 213 W.Va. at 465, 583 S.E.2d at 88.

## IV.

## CONCLUSION

In view of the foregoing, we find that the circuit court exceeded its jurisdiction when it ordered production and disclosure of the "A" tort file and "B" coverage file and without applying the correct legal standards to Westfield's assertions of attorney-client privilege, quasi attorney-client privilege and work product doctrine. Accordingly, consistent with this opinion, production and disclosure of the documents in question are hereby

prohibited, pending an in camera review of the documents by the circuit court or the court's designated special master.

Writ granted as moulded.

Justice MCGRAW dissents and reserves the right to file a dissenting opinion.

Chief Justice MAYNARD concurs and reserves the right to file a concurring opinion.

McGRAW, Justice, dissenting.

I dissent to the majority opinion because it gives defendants in bad faith actions another way to delay trials. The usual goal of a defendant, like the one in this case, is delay. Delay is the defendant's ally and the injured party's mortal enemy. The majority opinion, while well drafted and logical in its approach, hands defendants another delaying tactic to add to an already burgeoning arsenal.

The procedures set in place by the majority presume that a defendant will always act reasonably and in good faith when making claims of privilege, but the lower court had already determined that this defendant was not cooperating. Judges have great discretion in managing the discovery process:

> A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996); *accord,* syl. pt. 5, *State ex rel. Atkins v. Burnside,* 212 W.Va. 74, 569 S.E.2d 150 (2002) (*per curiam*). The judge was faced with a recalcitrant insurance company that resisted discovery at every turn. The judge, in his discretion, opted to sanction the company by ordering discovery of the documents in question. Nothing about this should "shock our sense of justice." *Id.*

By creating this procedure whereby an insurance company may claim that 450 documents are privileged and then require a busy circuit court judge to examine each one (or put the State to the time and delay of appointing a special master to do so), the majority helps create the kind of delay sought by most defendants. I believe that, "[j]ustice delayed is justice denied." *State v. Bail,* 140 W.Va. 680, 88 S.E.2d 634 (1955). Therefore, I must respectfully dissent.