# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Arrow Financial Services, LLC,**
**Respondent Below, Petitioner**

**vs)  No. 14-0316** (Kanawha County 09-MISC-213)

**Patrick Morrisey, Attorney General,**
**Petitioner Below, Respondent**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Arrow Financial Services, LLC, by counsel Don C. A. Parker and Bruce M. Jacobs, appeals the February 26, 2014, order of the Circuit Court of Kanawha County granting respondent's petition to enforce its investigative subpoena. Respondent Patrick Morrisey, Attorney General, by counsel Norman Googel, filed his response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The Attorney General filed a petition to enforce his investigative subpoena and for related relief before the circuit court. The circuit court heard oral argument, and entered its "Order Granting Petition to Inforce [sic] Investigative Subpoena" on February 26, 2014. Petitioner appeals from that order.

In its order, the circuit court found that GA Financial Trust 2002-A ("GA Financial") was incorporated on October 25, 2002, as a "statutory trust" under Delaware law. On October 25, 2012, GA Financial purchased "a portfolio of charged-off credit card accounts for collection from Providian National Bank, which included accounts allegedly owed by West Virginia residents." GA Financial; Arrow Financial Services, LLC, ("Arrow") a third-party collection agency located in Illinois; as well as an undisclosed party entered into a servicing agreement. The servicing agreement provides that Arrow would be deemed a legal agent for GA Financial whenever it pursues collection litigation using an in-house attorney and that certificate holders, on behalf of GA Financial, appoint Arrow as the exclusive servicer for collection of the accounts purchased by GA Financial. Arrow engaged in the collection of charged-off credit card accounts for or on behalf of GA Financial at all relevant times, and Julie Novak was the vice president and corporate counsel of Arrow at all relevant times. GA Financial did not have a license and surety bond as a collection agency, as defined by the West Virginia Collection Agency Act

1

("WVCAA"), West Virginia Code § 47-16-2(b) (2003).

On February 8, 2008, the Attorney General received a complaint from a West Virginia resident that GA Financial was collecting debts in West Virginia without a license and surety bond. The Attorney General issued an investigative subpoena on March 15, 2009, seeking production of documents and information pertaining to their collection activities in West Virginia. The subpoena was served upon the West Virginia Secretary of State ("WVSOS") on March 19, 2010, for delivery to GA Financial via its registered agent and to Arrow to the attention of Ms. Novak. The subpoena was sent by the WVSOS by certified mail, return receipt requested, to GA Financial and Arrow/Ms. Novak on March 19, 2010. According to the circuit court, there are no public records confirming delivery to GA Financial, but the subpoena was delivered and signed for by "Willie Brown" at Arrow's corporate office. On April 3, 2009, GA Financial filed with the Attorney General its response to the subpoena to produce certain records; its response indicates that it was made "by and through its duly appointed managing and servicing agent." That response contains nineteen general objections. In its response to Item 1 of the Attorney General's subpoena, GA Financial represented that it had appointed Arrow as its managing and servicing agent and that Arrow maintains the computer system of record relating to the accounts owned by GA Financial. GA Financial also stated that as a trust which merely holds, but does not service accounts, it did not have documents responsive to twenty-three of the requested items. GA Financial produced only the heavily redacted servicing agreement.

The only documents produced by Arrow on behalf of GA Financial in response to the subpoena, other than the redacted servicing agreement, consist of Arrow's West Virginia collection agency license and surety bond. Arrow did, however, disclose some pertinent information, including the following: (1) GA Financial's acknowledgment that its agent and trustee was the agent served by the WVSOS; (2) GA Financial appointed Arrow as its managing and servicing agent and Arrow maintains the computer system of records relating to the accounts GA Financial owns; (3) GA Financial's admission that Arrow, as GA Financial's managing and servicing agent, may report appropriate information to the three major consumer reporting agencies; and (4) GA Financial's acknowledgment that it was a debt buyer but characterized itself as a "passive entity" which it asserts would not be required to be licensed. The Attorney General reportedly contacted all magistrate and circuit courts in West Virginia and learned that GA Financial was a plaintiff in at least four debt collection suits in West Virginia. On June 11, 2009, the Attorney General filed his petition before the circuit court asking the court to issue an order compelling GA Financial and Arrow to comply with the subpoena and enjoining GA Financial from collecting debts in West Virginia until such time as it fully complies with the subpoena and becomes licensed and bonded as required by law. On August 23, 2010, Arrow and GA Financial responded to the petition. In their responses, GA Financial and Arrow argued that they were not served with the subpoena, the State improperly included a request for injunctive relief in its petition, the Attorney General has no statutory authority to investigate the alleged violations of the WVCAA, GA Financial did not fail to comply with the subpoena, the Attorney General cannot make GA Financial a party to this legal action because GA Financial is a trust and only a trustee can be made a party, and the subpoena cannot be enforced because it fails to meet the criteria set out by this Court in *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

In its order, the circuit court found that the records do not confirm that the subpoena was delivered to GA Financial, but the records confirm that the subpoena was delivered and signed for by "Willie Brown" on behalf of Arrow. It went on to find that even if GA Financial was not formally served with the subpoena, the subpoena was still enforceable against GA Financial because the servicing agreement confirmed that Arrow was designated by GA Financial as its "paying agent, managing agent and servicer." It further found that whether GA Financial was properly served was a moot point because GA Financial fully responded to the subpoena prior to the filing of the petition before the circuit court. The circuit court considered the statutory definition, under Delaware law, of "statutory trust" and found that GA Financial is an entity that can sue and be sued. Citing *Cavalry SPV I v. Morrisey, Attorney General*, 232 W.Va. 325, 752 S.E.2d 356 (2013), the circuit court determined that this Court recently rejected the assertion that the Attorney General cannot enforce the WVCAA. The circuit court specifically found that the Attorney General's petition to enforce its investigative subpoena should be granted, and GA Financial and Arrow were ordered to fully comply with the investigative subpoena within thirty days after the entry of the order. Arrow appeals from that order.

Like in *Cavalry*, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." *Id.* at 331, 752 S.E.2d at 362 (citing Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995)). In addition,

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review.

*Cavalry*, 232 W.Va. at 331, 752 S.E.2d at 362 (quoting Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997)). We note at the outset that "[t]he Attorney General's investigatory powers include the power to issue investigative subpoenas pursuant to W.Va. Code § 46A-7-104 (1974) (Repl. Vol. 2006)." Syl. Pt. 1, *Cavalry*, 232 W.Va. at 327, 752 S.E.2d at 358.

On appeal, petitioner asserts four assignments of error. First, petitioner argues that the circuit court erred in directing GA Financial to comply with the investigative subpoena because the subpoena was moot. Petitioner asserts that GA Financial was dissolved more than three years before the circuit court entered its order and that prior to that ruling, Arrow advised the court that GA Financial had been dissolved. It further argued that because the subpoena was only directed to GA Financial, the petition to enforce the subpoena was moot. In response, the Attorney General contends that the assertion of mootness is premature because full compliance with the subpoena could supply the State with actionable information, which is consistent with the statutory purpose of the subpoena. The Attorney General also argues that the harm to West Virginia consumers from the alleged unlawful debt collection activities has not been alleviated by the fact that GA Financial has ceased further collection activities.

This Court has held that a case is not moot "even though a party to the litigation has had a

3

change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review." *State Farm Mut. Auto Ins. Co. v. Schatken*, 230 W.Va. 201, 210 n.6, 737 S.E.2d 229, 238 n.6 (2012) (quoting Syl. Pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984)). However, in addressing a similar issue, the Supreme Court of the United States held that the Act must be read to apply to lawyers engaged in consumer debt-collection litigation. *See Heintz v. Jenkins*, 514 U.S. 291 (1995). As of the filing of the petition before the circuit court, there were several debt collection actions pending in West Virginia courts on behalf of GA Financial against West Virginia consumers. Therefore, we find no error in the circuit court's direction to GA Financial to comply with the investigative subpoena despite petitioner's claim of mootness.

Second, petitioner contends that the circuit court erred by enforcing the investigative subpoena against Arrow because Arrow was not specifically named in the style of the subpoena. Petitioner argues that the circuit court failed to note that petitioner and GA Financial are legally distinct entities and that petitioner is GA Financial's agent for the limited purposes set forth in the servicing agreement. It further argues that Arrow was not identified as an entity under investigation by the Attorney General, and the subpoena was directed to GA Financial with a copy addressed to Ms. Novak. Petitioner asserts that when an investigative subpoena for a grand jury is unclear, it must be construed against the drafter pursuant to a decision from the United States District Court for the District of Maryland. *In re Grand Jury Subpoenas Duces Tecum, August 1986*, 658 F.Supp. 474, 481 (D.Md. 1987). While petitioner cites no West Virginia authority for the proposition, it argues that the same standard should be applied to the Attorney General's subpoena power in this case. It contends that to the extent the Attorney General mentioned petitioner in the instruction section in the subpoena, it does not validate the subpoena as to petitioner.

This Court has reviewed the subpoena at issue. While the subpoena states it is "IN THE MATTER OF THE INVESTIGATION OF: GA FINANCIAL TRUST 2002-A," it is clearly addressed to both GA Financial and "ATTN: JULIE NOVAK VICE PRESIDENT & GENERAL COUNSEL ARROW FINANCIAL SERVICES, LLC." The instructions in the subpoena support the circuit court's finding that petitioner was specifically named in the subpoena, as the instructions specifically name petitioner as a party who must comply with those instructions. We have previously noted that the rules of civil procedure are not applicable to subpoena enforcement proceedings at the investigative stage. *See State ex rel. McGraw v. Bloom*, Appeal 35716 (W.Va. Supreme Court, February 17, 2011) (memorandum decision). On the face of the subpoena, it is clearly applicable to petitioner. Therefore, we find no error in the circuit court's finding that Arrow was a proper party to this subpoena.

Petitioner's third assignment of error is that the circuit court erred in finding that GA Financial was properly served with the investigative subpoena. Petitioner argues that it was the Attorney General's burden to prove that the investigative subpoena was procedurally proper. The circuit court acknowledged that there was no proof that the subpoena was delivered to GA Financial. Petitioner, therefore, argues that the circuit court failed to take into account that petitioner's contractual obligations as "managing agent and servicer" under the servicing agreement did not include acting as GA Financial's agent for service of process, nor could the

4

servicing agreement be construed in that manner. Petitioner contends that GA Financial did not waive its defense of lack of process because there was no proceeding in which it could have waived the same. Petitioner asserts that the Attorney General issued the subpoena outside the context of a civil action or formal agency proceeding, and the defenses of waiver and estoppel exist only in the context of civil actions, agency proceedings, and the like, where context has made a person or entity aware of their rights and the need to either relinquish them or proceed at their peril for fear that they may unknowingly forgo them. Petitioner claims both it and GA Financial voluntarily provided the Attorney General with certain documents but that they had no forum in which to waive any defense to enforcement.

The investigative subpoena was served upon the WVSOS on March 19, 2010, for delivery to GA Financial through its registered agent, and the subpoena was sent by the WVSOS by certified mail, return receipt requested, to GA Financial on that same date. While there is no record that GA Financial received the subpoena mailed by the WVSOS, there is no dispute that GA Financial's counsel filed a response to the subpoena through its local counsel less than thirty days after the subpoena was sent by the WVSOS. GA Financial's response included general objections to that subpoena and limited documents and information responsive to the same. Therefore, it is clear that GA Financial promptly received the subpoena. Under the specific facts of this case, we find that the service of the subpoena upon GA Financial, a non-party to this appeal, is moot. Further, we note that petitioner and GA Financial could have challenged the investigative subpoena in circuit court if they believed they had grounds to do so. *See Feathers v. W.Va. Bd. of Med.*, 211 W.Va. 96, 101, 562 S.E.2d 488, 493 (2001).[1]

Petitioner's final assignment of error is that the circuit court erred in finding that the Attorney General issued the investigative subpoena for a legislatively authorized purpose. Petitioner argues that the claims alleged and relief sought in the petition exceeded the scope of the request to enforce an investigative subpoena. It contends that when the Attorney General filed his petition in this case, he had already concluded that GA Financial had violated the law. Petitioner asserts that the Attorney General's authority ended when he made the determination that an act or a violation of the law had been committed. West Virginia Code § 46A-7-104 provides the Attorney General with the authority to issue investigative subpoenas. That statute further permits the Attorney General to apply to the circuit court for an order compelling compliance if a person, without lawful excuse to obey a subpoena, fails to obey a subpoena. *Id.*; *See* Syl. Pt. 1, *Cavalry*, 232 W.Va. at 327, 752 S.E.2d at 358. We recently determined that "[w]hen the Attorney General files a cause of action against a person or entity that is subject to an investigative subpoena, the Attorney General's subpoena authority ends as to those matters that form the basis of the complaint's allegations . . . ." Syl. Pt. 2, in part, *id.* However, no such

---

[1] We made clear in *State ex rel. Hoover v. Berger* that an administrative subpoena duces tecum is not self-executing, but is a direction to produce documents subject to judicial review and enforcement. Thus, the subject or target of an administrative subpoena duces tecum may challenge the subpoena before yielding the information sought. . . .

*Feathers*, 211 W.Va. at 101, 562 S.E.2d at 493 (citing *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996)).

complaint has been filed in the instant case. The only action filed to date is the petition to the circuit court seeking compliance with the investigative subpoena, as specifically permitted and authorized by statute.[2] Therefore, we find that the circuit court did not err in finding that the investigative subpoena was issued for a legislative purpose.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[2] While the request for relief included injunctive relief, the circuit court ordered that GA Financial and petitioner fully comply with the Attorney General's investigative subpoena within thirty days of the entry of its order. The circuit court did not, however, enjoin petitioner or GA Financial from debt collection activities. Therefore, we will not address that issue.