# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

FILED

November 13, 2013

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1564

**CAVALRY SPV I, LLC; CAVALRY SPV II, LLC;
CAVALRY INVESTMENTS, LLC; AND
CAVALRY PORTFOLIO SERVICES, LLC,**
Defendants Below, Petitioners

**V.**

**PATRICK MORRISEY,
ATTORNEY GENERAL,**
Plaintiff Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Civil Action No. 10-C-994

**AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED**

**AND**

No. 12-0546

**CAVALRY SPV I, LLC; CAVALRY SPV II, LLC;**

**CAVALRY INVESTMENTS, LLC; AND
CAVALRY PORTFOLIO SERVICES, LLC,**
**Defendants Below, Petitioners**


**V.**


**PATRICK MORRISEY,
ATTORNEY GENERAL,**
**Plaintiff Below, Respondent**

---

**Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Civil Action No. 10-C-994**

**AFFIRMED**

---

**Submitted: October 1, 2013
Filed: November 13, 2013**

| | |
|---|---|
| **Don C.A. Parker** | **Patrick Morrisey** |
| **Bruce M. Jacobs** | **Attorney General** |
| **Spilman Thomas & Battle, PLLC** | **Elbert Lin** |
| **Charleston, West Virginia** | **Solicitor General** |
| **Attorneys for the Petitioners** | **Norman Googel** |
| | **Assistant Attorney General** |
| | **Charleston, West Virginia** |
| | **Attorneys for the Respondent** |

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. The Attorney General's investigatory powers include the power to issue investigative subpoenas pursuant to W. Va. Code § 46A-7-104 (1974) (Repl. Vol. 2006).

2. When the Attorney General files a cause of action against a person or entity that is subject to an investigative subpoena, the Attorney General's subpoena authority ends as to those matters that form the basis of the complaint's allegations, and the rules of discovery applicable to civil proceedings generally provide the method by which the Attorney General may continue to investigate the alleged wrongdoing. However, an investigative subpoena survives the Attorney General's filing of a lawsuit when the subpoena, in whole or in part, pertains to matters that do not form the basis of the subject complaint.

3. Once the Attorney General has instituted a civil action against a person or entity to enjoin unlawful conduct, the Attorney General may also seek temporary relief against the person or entity during the pendency of such proceedings in accordance with W. Va. Code § 46A-7-110 (1974) (Repl. Vol. 2006).

**Davis, Justice:**

The petitioners herein and defendants below, Cavalry SPV I, LLC ("SPV I"); Cavalry SPV II, LLC ("SPV II"); Cavalry Investments, LLC ("CI"); and Cavalry Portfolio Services, LLC ("CPS")[1] appeal from two orders entered by the Circuit Court of Kanawha County pertaining to the enforcement of an investigative subpoena issued against them by the respondent herein and plaintiff below, the Attorney General of West Virginia, Patrick Morrisey[2] ("Attorney General"). This Court consolidated the two appeals for purposes of "argument, consideration[,] and decision" by orders entered April 24, 2013.

In Case Number 11-1564, the Petitioners appeal from an order entered October 7, 2011, by the Circuit Court of Kanawha County. By that order, the circuit court denied the Petitioners' motion to dismiss the investigative subpoena; granted the Attorney General's motion for a temporary injunction enjoining the Petitioners from collecting debts they had acquired before they were licensed in West Virginia to do so; compelled the Petitioners to comply with the investigative subpoena; and ordered the Petitioners to send a letter to affected consumers. On appeal to this Court, the Petitioners challenge the validity and

---

[1] Where context permits, the named petitioners will be referred to collectively as "the Petitioners."

[2] While this case was pending before the Court, Patrick Morrisey was sworn into office as Attorney General for the State of West Virginia, replacing former Attorney General Darrell V. McGraw, Jr. *See* W. Va. R. App. Proc. 41(c) (explaining procedure for substitution of parties who hold public office).

enforceability of the Attorney General's investigative subpoena. Upon a review of the parties' arguments, the appendix record submitted for appellate consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the circuit court's October 7, 2011, order. In summary, we find that the Attorney General's investigatory powers include the power to issue investigative subpoenas pursuant to W. Va. Code § 46A-7-104 (1974) (Repl. Vol. 2006) and that the subject investigative subpoena was validly issued in the case *sub judice* in accordance with the Attorney General's statutory authority to conduct investigations. We further conclude that when the Attorney General files a cause of action against a person or entity that is subject to an investigative subpoena, the Attorney General's subpoena authority ends as to those matters that form the basis of the complaint's allegations, and the rules of discovery applicable to civil proceedings generally provide the method by which the Attorney General may continue to investigate the alleged wrongdoing. However, an investigative subpoena survives the Attorney General's filing of a lawsuit when the subpoena, in whole or in part, pertains to matters that do not form the basis of the subject complaint. Therefore, the Attorney General's investigative subpoena in the case *sub judice* is enforceable as to matters that are not encompassed by the Attorney General's pending civil action against the Petitioners. Accordingly, we reverse that portion of the circuit court's order that enforced the entirety of the Attorney General's investigative subpoena prior to determining whether any of the matters of inquiry addressed therein are now subject to civil discovery in the pending enforcement proceedings and remand this case to the circuit court

2

to conduct such an analysis. We affirm the remainder of the circuit court's rulings preliminarily upholding the Attorney General's investigative subpoena.

In Case Number 12-0546, the Petitioners appeal from an order entered March 20, 2012, by the Circuit Court of Kanawha County. By that order, the circuit court denied the Petitioners' motion to dissolve or modify the aforementioned temporary injunction; refused the Attorney General's motion for stay of discovery pending the Petitioners' compliance with the Attorney General's investigative subpoena; deemed that portion of the court's October 7, 2011, order requiring the Petitioners to comply with the Attorney General's investigative subpoena to be a final and appealable order; and provided language to be included in the Petitioners' letter to affected consumers. On appeal to this Court, the Petitioners contest the circuit court's decision to uphold its imposition of a temporary injunction. Upon a review of the parties' arguments, the appendix record submitted for appellate consideration, and the pertinent authorities, we affirm the circuit court's March 20, 2012, order. In summary, we find that once the Attorney General has instituted a civil action against a person or entity to enjoin unlawful conduct, the Attorney General may also seek temporary relief against the person or entity during the pendency of such proceedings in accordance with W. Va. Code § 46A-7-110 (1974) (Repl. Vol. 2006). We further conclude that the temporary injunction imposed upon the Petitioners herein was properly issued in compliance with this Court's prior holding in Syllabus point 2 of *State ex rel. McGraw v.*

3

*Imperial Marketing*, 196 W. Va. 346, 472 S.E.2d 792 (1996).[3]

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to the instant controversies are not generally disputed by the parties. All of the Petitioners herein are engaged in various aspects of the collection of consumer debts, which include purchasing charged-off debts that are deemed to be uncollectible by the original creditors and attempting to collect these debts from consumer debtors.[4] The subject investigation originated when the Consumer Protection Division of the Attorney General's Office received information and approximately sixteen complaints from affected consumers indicating that certain[5] of the Petitioners had engaged in conduct in violation of the consumer protection laws of this State.[6] Based upon this information, as well as the Attorney General's desire to determine whether the alleged violations of the West Virginia Consumer Credit and Protection Act had been committed, and, if so, to prevent

---

[3]See Section III.B.2., *infra*, for the full text of Syllabus point 2 of *State ex rel. McGraw v. Imperial Marketing*, 196 W. Va. 346, 472 S.E.2d 792 (1996).

[4]In their brief in Case Number 11-1564, the Petitioners describe their individual roles in this debt collection process as follows: "SPV I and SPV II were purchasers and holders of credit card debt"; CI "is a purchaser and holder of different types of obligations, including credit card debt"; and "CPS is a collection agency[.]"

[5]*See* note 10, *infra*.

[6]For further discussion of the nature of the alleged violations, see Section III.A.3., *infra*.

4

further violations thereof, the Attorney General issued the subject investigative subpoena on January 25, 2010. Although all four Petitioners were referenced within the body of the investigative subpoena, only "CAVALRY SPV I, LLC and CAVALRY SPV II, LLC" were named in the style of the subpoena and in the accompanying letter detailing the "Investigation of Cavalry SPV I and II."[7] The Petitioners filed numerous objections in response to the Attorney General's investigative subpoena. At this juncture, the parties differ as to whether the named Petitioners provided information requested by the investigative subpoena; however, it is clear that any such compliance did not respond completely to the subpoena's demands.

Thereafter, on June 3, 2010, the Attorney General filed a civil action in the Circuit Court of Kanawha County against all four Petitioners (1) seeking an order compelling the named Petitioners to comply with the investigative subpoena and (2) alleging violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.* *See generally* W. Va. Code § 46A-7-108 (1974) (Repl. Vol. 2006) (authorizing Attorney General to bring action to enjoin violations of chapter); W. Va. Code § 46A-7-111 (1999) (Repl. Vol. 2006) (permitting Attorney General to bring civil actions against creditors). As to the alleged statutory violations, the Attorney General also sought temporary relief pursuant to W. Va. Code § 46A-7-110 (1974) (Repl. Vol. 2006) to enjoin the Petitioners from

---

[7]*See infra* notes 8 & 10.

continuing their alleged misconduct during the pendency of the enforcement proceedings. The Petitioners moved to dismiss the Attorney General's complaint.

By order entered October 7, 2011, which order forms the basis of Case Number 11-1564 in this Court, the circuit court denied the Petitioners' motion to dismiss the complaint and granted the Attorney General's request for temporary relief. In pertinent part, the court ruled:

> The Attorney General's motion for temporary injunction against the LLC Defendants should be, and it hereby is, GRANTED against SPV I, SPV II, and Calvary [sic] Investments, but not CPS.[8]
>
> The Defendants SPV I, SPV II, and Calvary [sic] Investments should be, and they hereby are, ENJOINED from engaging in any actions to collect debts acquired prior to the date that they became licensed, including but not limited to, (i) collecting or continuing to collect payments arising from oral or written agreements; (ii) prosecuting or continuing to prosecute pending collection suits; (iii) collecting or continuing to collect payments arising from judgments already entered in lawsuits; and (iv) placing or continuing to place liens or attachments on personal or real property, including garnishment of wages, arising from judgments already entered in lawsuits. In addition, SPV I, SPV II, and Calvary [sic] Investments are hereby ORDERED to release all garnishments of wages and liens or

---

[8]The circuit court found that three of the Petitioners did not become licensed and bonded with the West Virginia State Tax Department to collect debts until after the Attorney General had filed his complaint against them: SPV I (October 13, 2010), SPV II (October 12, 2010), and CI (October 7, 2010). By contrast, the court found that "CPS was licensed and bonded with the State Tax Department to collect debts at all relevant times in question."

attachments filed against real or personal property prior to the time that they became licensed to collect debts in West Virginia.

Notwithstanding all of the foregoing, SPV I, SPV II, and Calvary [sic] Investments may receive or continue to receive payments made voluntarily by consumers to them without solicitation or effort on their part. Provided, however, all such money received shall be placed in an escrow account and the LLC Defendants shall make appropriate periodic reports accounting for such funds to the Attorney General.

The Attorney General's request for an Order compelling the LLC Defendants to comply with his investigative subpoena should be, and it hereby is, GRANTED.

(Footnote added). Finally, the order directed the Petitioners to send a letter to all affected consumers

informing them of the existence of this Order so that they may decide whether to voluntarily continue to make payments to these entities as a result of any judgments, settlement agreements, or other collection activities initiated prior to the time that they became licensed to collect debts in West Virginia.

From this order, the Petitioners appeal to this Court in Case Number 11-1564.

Following the circuit court's order restraining the Petitioners' debt collection activities through its imposition of a temporary injunction, the Petitioners moved to dissolve or otherwise modify the terms of the temporary injunction. By order entered March 20, 2012, which order forms the basis of Case Number 12-0546 in this Court, the circuit court denied the Petitioners' motion to dissolve or modify the temporary injunction. In rendering its ruling, the circuit court also declared final that portion of its earlier order compelling the

7

Petitioners to comply with the Attorney General's investigative subpoena so as to permit the Petitioners to file an appeal therefrom. The court further clarified the language to be included in the aforementioned letter to affected consumers. In addition, the circuit court denied the Attorney General's request to stay discovery pending the Petitioners' compliance with the investigative subpoena thereby allowing discovery to proceed in the underlying civil action. Finally, with regard to the Petitioners' subpoena compliance, the court recognized that,

> [i]nasmuch as the parties have advised the Court that they may have reached a tentative agreement to resolve their dispute concerning compliance with the subpoena, the parties' respective motions pertaining to compliance with the subpoena will be held in abeyance to afford the parties an opportunity to finalize and perform the Agreement or to request further assistance from the Court.

From this order, the Petitioners appeal to this Court in Case Number 12-0546.[9]

---

[9]After the circuit court rendered these rulings, it appears that the Attorney General has continued to seek the Petitioners' compliance with the terms of the investigative subpoena. In this regard, the Attorney General has filed a "Petition for Contempt" against the Petitioners on May 30, 2012, and an "Amended Petition for Contempt" against the Petitioners on July 5, 2012. Insofar as no corresponding orders of the circuit court holding the Petitioners in contempt, or failing to hold the Petitioners in contempt, for their alleged failure to comply with the Attorney General's investigative subpoena have been appealed from herein, we need not consider these continuing proceedings in deciding the cases *sub judice*.

## II.

## STANDARD OF REVIEW

Given that our consideration of the assigned errors is governed by specific standards of review applicable to each issue, we will set forth the corresponding standards in our discussion thereof.

## III.

## DISCUSSION

Because each of the instant appeals raises distinct issues, we will consider each case separately.

### *A. Case Number 11-1564*

In Case Number 11-1564, the Petitioners contend that the circuit court erred by (1) determining that the Attorney General's investigative subpoena is valid despite the Attorney General's failure to hold an administrative hearing prior to its issuance, the lack of probable cause to support the subpoena, and the subpoena's inclusion of unauthorized interrogatories and (2) enforcing the investigative subpoena after the Attorney General had filed a lawsuit against the Petitioners.[10]

---

[10]The Petitioners additionally assigned error to the circuit court's ruling whereby it purportedly enforced the Attorney General's investigative subpoena against all four of the Petitioners herein, rather than requiring only the two Petitioners actually named
(continued...)

**1. Standard of review.** At issue in this appeal is the authority of the Attorney General of West Virginia to issue investigative subpoenas and the correctness of the circuit court's order enforcing the same. Insofar as the Attorney General's investigatory authority is created and defined by statute, we accord a plenary review to the circuit court's interpretation thereof: "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

Moreover, we apply a three-part standard of review to the circuit court's order finding the Attorney General's investigative subpoena to be valid and enforceable against the Petitioners:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review

[10](...continued)
in the style of the subpoena to comply with its terms. Counsel for the Attorney General represented during the oral argument of this case before this Court that the subpoena would be enforced only against those Petitioners who are specifically named in the style of the investigative subpoena. Because the Attorney General's concession resolves this assignment of error, we need not consider it further.

the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

Our consideration of the Petitioners' assignments of error will be guided by these standards.

**2. Investigatory power of the Attorney General.** Although the Petitioners contend that the circuit court erred in enforcing the subject investigative subpoena, certain of their contentions are more appropriately considered in the context of the scope of the Attorney General's statutory authority to conduct investigations in the first instance. Specifically, whether the Attorney General was required to hold an administrative hearing before issuing the subject subpoena and whether the Attorney General could request information by interrogatory may be determined by examining the Legislature's definition of the Attorney General's investigatory authority.

At the outset, we note that "[t]he powers and duties of the Attorney General are specified by the constitution and by rules of law prescribed pursuant thereto." Syl. pt. 1, *Manchin v. Browning*, 170 W. Va. 779, 296 S.E.2d 909 (1982), *overruled on other grounds by State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625 (2013).[11]

_____

[11]In Syllabus point 3, in part, of *State ex rel. Discover Financial Services, Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625 (2013), we recognized that the Attorney General
(continued...)

11

Stated otherwise, "the Attorney General['s] . . . power . . . is conferred by law through statute and the Constitution." *State ex rel. Fahlgren Martin, Inc. v. McGraw*, 190 W. Va. 306, 312, 438 S.E.2d 338, 344 (1993). In the case *sub judice*, the Attorney General derives his power to investigate possible violations of the West Virginia Consumer Credit and Protection Act from W. Va. Code § 46A-7-104 (1974) (Repl. Vol. 2006), which provides, in pertinent part:

> (1) If the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney general, he may, and shall upon request of the commissioner, make an investigation to determine if the act has been committed and, to the extent necessary for this purpose, may administer oaths or affirmations, and, upon his own motion or upon request of any party, may subpoena witnesses, compel their attendance, adduce evidence, and require the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of admissible evidence.

> . . . .

> (3) Upon failure of a person without lawful excuse to obey a subpoena or to give testimony and upon reasonable notice to all persons affected thereby, the attorney general may apply to the circuit court of the county in which the hearing is to be held for an order compelling compliance.

To ascertain whether a hearing is a necessary prerequisite to the issuance of an investigative

---

[11](...continued)
"retains inherent common law powers, when not expressly restricted or limited by statute." Insofar as the authority of the Attorney General in the case *sub judice* is derived from the governing statutes, we need not consider the extent of his common law authority.

subpoena and whether the Attorney General has the authority to request information by interrogatory, we must examine the governing statutory language.

The first step of statutory construction requires an examination of the Legislature's intent in enacting the subject statute: "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). *Accord* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). In other words, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). *Accord Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.").

Applying these rules of statutory construction to the subject legislative provision, we find the language of W. Va. Code § 46A-7-104 to be plain and unambiguous in its intention to permit the Attorney General to issue an investigative subpoena. Accordingly, we hold that the Attorney General's investigatory powers include the power to issue investigative subpoenas pursuant to W. Va. Code § 46A-7-104 (1974) (Repl. Vol. 2006). Considering the questions posed by the Petitioners, we further conclude that the plain language of W. Va. Code § 46A-7-104 definitively answers and dispenses with both the Petitioners' contention that an administrative hearing is a necessary prerequisite to the Attorney General's issuance of an investigative subpoena and the Petitioners' assertion that interrogatories are not included within the scope of the Attorney General's investigatory authority.

In their arguments before this Court, the Petitioners contend that W. Va. Code § 46A-7-104(1) requires the Attorney General to hold an administrative hearing prior to the issuance of an investigative subpoena. We disagree. The language of this provision does not impose upon the Attorney General an obligation to hold an administrative hearing incident to the issuance of an investigative subpoena. In fact, the word "hearing" does not appear anywhere in the language of W. Va. Code § 46A-7-104(1). While it is plausible to read the statute as contemplating that a hearing may be held at some point in time to facilitate certain processes related to the subpoena's execution, *e.g.*, the administration of oaths or

14

affirmations and the compulsory attendance of witnesses, W. Va. Code § 46A-7-104(1) simply does not require the Attorney General to hold a hearing as a prerequisite to the issuance of an investigative subpoena.

"'Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992)). Moreover, "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citations omitted).

We are confident that if the Legislature had intended to establish a precise and definite requirement that a hearing be held prior to the issuance of an investigative subpoena, the Legislature would have clearly stated the necessity of such a procedure as it did when it explained the process for the Attorney General to seek a party's compliance with an investigative subpoena. In this regard, the Legislature specifically has stated in W. Va. Code § 46A-7-104(3) that,

> [u]pon failure of a person without lawful excuse to obey
> a subpoena or to give testimony and upon reasonable notice to

15

> all persons affected thereby, the attorney general may apply to the circuit court of the county in which *the hearing is to be held for an order compelling compliance*.

(Emphasis added). This statutory language plainly directs that a hearing is required before an order compelling compliance with an investigative subpoena may be issued. This language does not, however, address the need for a hearing to issue an investigative subpoena in the first instance. Therefore, we conclude that the Attorney General is not required to hold an administrative hearing prior to the issuance of an investigative subpoena pursuant to W. Va. Code § 46A-7-104.

Likewise, we reject the Petitioners' contention that the Attorney General's investigatory authority does not encompass the use of interrogatories. The plain language of W. Va. Code § 46A-7-104(1) permits the Attorney General to issue an investigative subpoena that

> require[s] the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of admissible evidence.

Given that the investigative subpoena can request a party to provide specific information, *e.g.*, through description, identity, and location details, it stands to reason that the Attorney General's investigatory authority contemplates the use of questionnaires, or interrogatories,

to specify the type of information sought through the subpoena. The use of interrogatories in this manner also benefits the party subject to the subpoena by directing his/her attention to the specific type of information sought by the subpoena. By focusing upon the precise information sought, the interrogatories also instruct the subject party as to what information he/she should provide to comply with the subpoena's terms. Therefore, we find that the Attorney General did not exceed his investigatory authority by issuing interrogatories in conjunction with the investigative subpoena issued to the Petitioners in this case.

**3. Validity and enforceability of investigative subpoena.** We next turn to the Petitioners' contentions that the investigative subpoena issued in this case was neither valid nor enforceable. Whether an investigative subpoena is valid and enforceable is an interrelated inquiry insofar as a judicial tribunal cannot enforce an investigative subpoena that is not valid in the first instance. In the case *sub judice*, the Petitioners contend that the Attorney General's investigative subpoena was not valid because no probable cause existed to support its issuance. Furthermore, the Petitioners argue that the circuit court erred by enforcing the Attorney General's investigative subpoena after the Attorney General had filed the instant lawsuit against them.

Pursuant to W. Va. Code § 46A-7-104(1), the existence of probable cause is a necessary prerequisite to the issuance of an investigative subpoena: "*[i]f the attorney*

17

*general has probable cause to believe that a person has engaged in an act which is subject*

*to action by the attorney general*, he may . . . make an investigation to determine if the act

has been committed[.]"[12]  (Emphasis added).  Probable cause to support the issuance of

> "an investigative subpoena . . . exists when facts and
> circumstances . . . would warrant an honest belief in the mind of
> a reasonable and prudent person that an offense has been, or is
> being, committed and that . . . information relative to the
> commission of that offense is in the possession of the person or
> institution to whom the subpoena is directed."

*State v. Fregien*, 331 Mont. 18, 20-21, 127 P.3d 1048, 1050 (2006) (quoting *State v. Nelson*,

283 Mont. 231, 243-44, 941 P.2d 441, 449 (1997) (additional citation omitted)).  *Accord*

*State v. Bilant*, 307 Mont. 113, 121, 36 P.3d 883, 888 (2001) (finding probable cause for the

issuance of an investigative subpoena to exist when there are "sufficient facts to support a

determination that there is a probability of criminal activity" (citation omitted)).  *See also*

*People v. Mason*, 989 P.2d 757, 761 (Colo. 1999) (holding that "probable cause for a

subpoena . . . requires a reasonable likelihood that the evidence sought exists and that there

is a nexus between the [person to whom, or entity to which, the subpoena is directed] and the

[alleged] crime").  *Cf.* Syl. pt. 4, *Feathers v. West Virginia Bd. of Med.*, 211 W. Va. 96, 562

---

[12]One other state also has promulgated a similar statute requiring the existence of probable cause to support the issuance of an investigative subpoena to determine whether the state's consumer protection laws have been, or are being, violated.  *See* Wyo. Stat. Ann. § 40-12-112(a) (West 2000) ("If, by inquiry the enforcing authority or as a result of complaints, the enforcing authority has probable cause to believe that a person has engaged in, or is engaging in, an act or practice that violates this act [Wyoming Consumer Protection Act], investigators designated by the Wyoming attorney general may administer oaths and affirmations, subpoena witnesses or matter, and collect evidence.").

S.E.2d 488 (2001) ("A finding that probable cause exists to substantiate a complaint made under the Medical Practice Act is not a necessary prerequisite for the Board of Medicine to issue a subpoena or subpoena duces tecum under W. Va. Code, 30-3-7(a)(2) [1980].").[13]

Under the facts of the case *sub judice*, we find that the Attorney General amply demonstrated probable cause to believe that the Petitioners had violated, or were violating, the provisions of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.*, and that the Petitioners possessed information relevant to such inquiry.

---

[13]It is important to note that the probable cause prerequisite to the issuance of the Attorney General's investigative subpoena in this case is established by W. Va. Code § 46A-7-104(1), which specifically requires the existence of "probable cause." By contrast, investigatory subpoenas issued by federal administrative agencies, and some state administrative agencies, do not require the existence of probable cause. *See, e.g.*, *Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007) ("Under Fourth Amendment law, an investigatory . . . subpoena is not subject to . . . probable cause requirements[.]" (citing *See v. City of Seattle*, 387 U.S. 541, 544, 87 S. Ct. 1737, 1740, 18 L. Ed. 2d 943 (1967))); *Hartford Cnty. Sheriffs Dep't Cmtys. Charities Ass'n v. Blumenthal*, 47 Conn. Supp. 447, 463, 806 A.2d 1158, 1171 (2001) ("The protections of a finding of probable cause, supported by oath or affirmation, simply do not apply in the context of an . . . investigatory subpoena." (citing *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-09, 66 S. Ct. 494, 505-06, 90 L. Ed. 614 (1946))); *Francis v. Accardo*, 602 So. 2d 1066, 1069 (La. Ct. App. 1992) ("[A]dministrative agencies need no probable cause to exercise their investigative powers[.]" (citation omitted)); *In re Suffolk Cnty. Ethics Comm'n*, 909 N.Y.S.2d 339, 342, 29 Misc. 3d 1136, 1139 (N.Y. Sup. Ct. 2010) ("[T]he factual basis required to sustain an investigative subpoena issued by a government agency need only be preliminary in nature as the agency is not required to demonstrate . . . probable cause that wrong doing has occurred or will be disclosed[.]" (citations omitted)). Because the governing statute herein expressly requires the existence of probable cause as a necessary prerequisite to the Attorney General's issuance of an investigative subpoena, we find the above-referenced authorities neither persuasive nor instructive to our analysis.

19

Prior to his issuance of the investigative subpoena in January 2010, the Attorney General had received several complaints and other information indicating that certain[14] of the Petitioners were collecting consumer debts without a license[15] or a surety bond[16] and suggesting that they may have engaged in, or may be engaging in, other improper debt collection practices.[17] Thus, prior to issuing the subject investigative subpoena, the Attorney General had "an honest belief . . . that an offense had been, or is being, committed"[18] and possessed sufficient information to specifically identify the various statutes that potentially had been violated. Moreover, the Attorney General directed the investigative subpoena to those Petitioners believed to possess "information relative to the commission of that offense."[19]  Contrary to the Petitioners' assertions, the Attorney General was not required to possess concrete proof of the specific alleged wrongdoing or to describe in detail the nature of the potentially

---

[14]*See* notes 8 & 10, *supra*.

[15]*See* W. Va. Code § 47-16-4(a) (1973) (Repl. Vol. 2006) (requiring collection agency to possess license).

[16]*See* W. Va. Code § 47-16-4(b) (1973) (Repl. Vol. 2006) (requiring collection agency to file surety bond).

[17]These other improper debt collection actions, which, if substantiated, constitute violations of the West Virginia Consumer Credit and Protection Act, include collecting debts for unlicensed debt purchasers (W. Va. Code § 46A-2-127(e) (1997) (Repl. Vol. 2006)); repeatedly contacting consumers who do not owe a debt (W. Va. Code § 46A-2-127(d) (1997) (Repl. Vol. 2006) and W. Va. Code § 46A-2-128(d) (1990) (Repl. Vol. 2006)); and harassing consumers by telephone (W. Va. Code § 46A-2-125 (1974) (Repl. Vol. 2006)).

[18]*Fregien*, 331 Mont. at 21, 127 P.3d at 1050 (internal quotations and citation omitted).

[19]*Id.*

nefarious misconduct at the time he issued his investigative subpoena. Rather, the purpose

of an investigative subpoena is precisely as its name implies: to investigate. Such an

investigation is designed to ascertain whether a violation of the Act has, in fact, occurred[20]

so as to permit the filing of an enforcement proceeding against the alleged offender. In short,

"[t]he investigatory power of the Attorney General . . . authoriz[es the Attorney General] to

investigate prior to making any charges of a violation of the law." *State ex rel. Palumbo v.*

*Graley's Body Shop, Inc.*, 188 W. Va. 501, 505 n.2, 425 S.E.2d 177, 181 n.2 (1992). The

United States Supreme Court has summarized such investigatory authority as

> the power to get information from those who best can give it and
> who are most interested in not doing so. . . . [A]n administrative
> agency charged with seeing that the laws are enforced may . . .
> have and exercise powers of original inquiry. It has a power of
> inquisition . . . [and] can investigate merely on suspicion[21] that
> the law is being violated, or even just because it wants assurance
> that it is not.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642-43, 70 S. Ct. 357, 363-64, 94 L. Ed. 401

(1950) (footnote added).


Probable cause for the issuance of an investigative subpoena, then, does not

anticipate information of sufficient detail as would permit the successful prosecution of an

---

[20]*See* W. Va. Code § 46A-7-104(1).

[21]See *supra* note 13 discussing differences between probable cause standard applicable to investigative subpoenas issued by the Attorney General in this State and lesser standard applicable to administrative subpoenas issued by federal, and some state, agencies.

enforcement proceeding. Rather, the Attorney General's investigative subpoena is designed to be issued when probable cause exists to believe a violation of the consumer protection laws of this State has occurred and serves to facilitate the Attorney General's investigation of such alleged wrongdoing by producing information that would support the filing of an enforcement action against the alleged violator. Under the facts of the case *sub judice*, we find that the Attorney General had probable cause to issue the subject investigatory subpoena and that the circuit court properly upheld the investigatory subpoena as valid.

We next consider whether the circuit court properly enforced the Attorney General's investigative subpoena. Pursuant to W. Va. Code § 46A-7-104, the Attorney General is authorized to seek an order compelling compliance with an investigative subpoena: "[u]pon failure of a person without lawful excuse to obey a subpoena . . . and upon reasonable notice to all persons affected thereby, the attorney general may apply to the circuit court of the county in which the hearing is to be held for an order compelling compliance." W. Va. Code § 46A-7-104(3). Whether a court should enforce an administrative subpoena is governed by satisfaction of the criteria we enumerated in Syllabus point 1 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In order to obtain judicial backing for the enforcement of an administrative subpoena, the agency must prove that (1) the subpoena is issued for a legislatively authorized purpose, (2) the information sought is relevant to the authorized purpose, (3) the information sought is not already within the agency's possession, (4) the information sought is adequately described,

22

and (5) proper procedures have been employed in issuing the subpoena. If these requirements are satisfied, the subpoena is presumably valid and the burden shifts to those opposing the subpoena to demonstrate its invalidity. The party seeking to quash the subpoena must disprove through facts and evidence the presumed relevance and purpose of the subpoena.

Applying these elements to the facts of the present case, we find that the Attorney General has satisfied the elements necessary to obtain judicial backing of his investigative subpoena. Unquestionably, the investigative subpoena was issued for a purpose specifically authorized by the Legislature, *i.e.*, to investigate alleged violations of the West Virginia Consumer Credit and Protection Act, and the material sought thereunder was designed to elicit information as to whether such statutory violations had, in fact, occurred. Moreover, at the time the Attorney General issued his investigative subpoena, he did not yet have the information in hand that he sought to obtain regarding the commission of the alleged violations, and the subpoena, itself, is sufficiently detailed to inform the parties subject thereto of the type of material that is requested thereunder. Finally, as noted in the preceding section, the Attorney General properly complied with the mandates of W. Va. Code § 46A-7-104(1) in issuing the investigative subpoena.

The investigative subpoena being thus "presumably valid" under *Hoover*, the Petitioners now bear the burden of proving the subpoena is invalid by challenging its "presumed relevance and purpose." Syl. pt. 1, in part, *Hoover*, 199 W. Va. 12, 483 S.E.2d

23

12. On appeal to this Court, the Petitioners contend that it is improper for the Attorney General to seek the enforcement of his investigative subpoena after he has filed a civil action against them alleging they have committed the same misconduct that he sought to investigate through the subpoena. Had the Attorney General sought to enforce his investigative subpoena at an earlier juncture, our inquiry likely would end here with a ratification of the circuit court's enforcement order. *See Citizens' Aide/Ombudsman v. Grossheim*, 498 N.W.2d 405, 407 (Iowa 1993) (noting that "[e]nforcement [of investigative subpoena] is the rule, not the exception, so long as [test for judicial enforcement thereof] is met" (citations omitted)). However, because the Attorney General sought to enforce his investigative subpoena in conjunction with the filing of a civil action against the same parties who were subject to the subpoena and because, through this civil action, the Attorney General sought to enforce the same statutory provisions the possible violation of which formed the impetus for the issuance of his investigative subpoena, we find the Petitioners' point to be well taken. We thus believe it is necessary to clarify the extent to which the investigative subpoena may be enforced in this particular procedural context.

As we noted in the foregoing discussion, "[t]he investigatory power of the Attorney General . . . authoriz[es the Attorney General] to investigate *prior* to making any charges of a violation of the law." *Graley's Body Shop*, 188 W. Va. at 505 n.2, 425 S.E.2d at 181 n.2 (emphasis added). Once a complaint has been filed formally charging a party with

24

statutory misconduct, however, the Attorney General no longer may rely upon his powers of investigation to elicit information to establish those specific consumer protection violations that form the basis of the complaint. Rather, upon the commencement of enforcement proceedings through the filing of a civil action by the Attorney General, the Attorney General's investigatory powers end as to those matters addressed in the complaint and are supplanted by the rules of discovery applicable to civil proceedings generally.[22] This reciprocal right of discovery in civil actions is described generally as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

W. Va. R. Civ. P. 26(b)(1). It has been said that

---

[22]We note that prior decisions of this Court involving the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.*, have acknowledged the availability of discovery in such proceedings. *See, e.g.*, *White v. Wyeth*, 227 W. Va. 131, 134, 705 S.E.2d 828, 831 (2010) (referencing class certification discovery); Syl. pt. 4, *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997) (holding, in context of consumer protection action, that court may allow discovery as aid to deciding defendant's motion to dismiss for lack of personal jurisdiction). *But see State ex rel. McGraw v. Imperial Mktg.*, 203 W. Va. 203, 209-11, 506 S.E.2d 799, 805-07 (1998) (per curiam) (upholding disallowance of discovery pursuant to W. Va. R. Civ. P. 56(f) because extrinsic evidence was not necessary for summary disposition of case).

> [t]he overarching purpose of discovery is to clarify and narrow the issues in litigations, so as to efficiently resolve disputes. This purpose makes litigation less of a game of "blindman's bluff" and more of a contest that seeks a fair and adequate resolution of a dispute. The discovery rules are available to any party in a civil action.

Franklin D. Cleckley, Robin J. Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 26[2], at 540 (2002) (footnotes omitted).

While both an investigative subpoena and civil discovery are designed to elicit information to support a claim, an investigative subpoena is not, however, a substitute for discovery. Simply stated, "[a] subpoena . . . is not a discovery device,"[23] "[n]or may a subpoena be used as a substitute for pretrial discovery."[24] *Accord Building Mgmt. Co. Inc. v. Schwartz*, 773 N.Y.S.2d 242, 244, 3 Misc. 3d 351, 353 (N.Y. Civ. Ct. 2004) (admonishing that "a trial subpoena . . . should [not] be used as a substitute for discovery" (internal quotation and citations omitted)). *See also United States v. Caro*, 461 F. Supp. 2d 478, 481 (W.D. Va. 2006) (observing that "subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases" (citations omitted)), *aff'd*, 597 F.3d 608, 620 (4th Cir. 2010).

---

[23]*In re Brussels Leasing Ltd. P'ship v. Henne*, 664 N.Y.S.2d 905, 907, 174 Misc. 2d 535, 538 (N.Y. Sup. Ct. 1997).

[24]*Law Firm of Ravi Batra, P.C. v. Rabinowich*, 909 N.Y.S.2d 706, 708, 77 A.D.3d 532, 533 (N.Y. App. Div. 2010) (internal quotations and citation omitted).

That is not to say, however, that the Attorney General's investigative subpoena did not survive the filing of his complaint in the case *sub judice*. Rather, the Attorney General's investigative subpoena unquestionably remains valid and enforceable as to those matters about which his investigation remains pending. *See, e.g.*, *In re McVane*, 44 F.3d 1127, 1141 (2d Cir. 1995) ("[T]he initiation of civil proceedings does not moot an administrative subpoena." (citations omitted)); *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 950 (D.C. Cir. 1994) (same); *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1518 (D.C. Cir. 1993) (same); *National Labor Relations Bd. v. Bacchi*, No. 04 MC 28 (ARR), 2004 WL 2290736, at *4 (E.D.N.Y. June 16, 2004) ("[I]t is well settled that the commencement of civil proceedings does not terminate an administrative agency's investigative authority nor moot its administrative subpoena." (citations omitted)); *Reich v. Hercules, Inc.*, 857 F. Supp. 367, 369 (D.N.J. 1994) ("When an administrative agency issues a subpoena pursuant to broad statutory authorization, a supervening civil proceeding does not render the subpoena moot." (citations omitted)); *Sutro Bros. & Co. v. Securities & Exch. Comm'n*, 199 F. Supp. 438, 439 (S.D.N.Y. 1961) (suggesting that administrative agency therein may continue its investigation following the commencement of public proceedings against alleged violators and recognizing that "such investigation [may] reveal further evidence for use in the pending proceeding"). *See also Bowles v. Bay of New York Coal & Supply Corp.*, 152 F.2d 330, 330 (2d Cir. 1945) ("[T]he rules of civil procedure do not apply to restrict or control administrative subpoenas.").

Nevertheless, to ensure that an investigative subpoena is not inadvertently used to obtain information from a defendant, against whom a civil complaint alleging statutory violations has been filed, when such inquiries should, instead, be made in accordance with the rules of discovery applicable to civil actions generally, we find it prudent to adopt the following holdings. Accordingly, we hold that when the Attorney General files a cause of action against a person or entity that is subject to an investigative subpoena, the Attorney General's subpoena authority ends as to those matters that form the basis of the complaint's allegations, and the rules of discovery applicable to civil proceedings generally provide the method by which the Attorney General may continue to investigate the alleged wrongdoing. However, an investigative subpoena survives the Attorney General's filing of a lawsuit when the subpoena, in whole or in part, pertains to matters that do not form the basis of the subject complaint.[25]

---

[25]Given the unique procedural posture of the case *sub judice*, the Attorney General's proceeding to enforce his investigative subpoena and his lawsuit to restrain violations of the consumer protection statutes were included within the confines of a single complaint. Other courts considering the continued viability of an investigative subpoena following the commencement of civil proceedings have suggested that the proper method of challenging the enforceability of the subpoena in associated judicial proceedings is in the judicial tribunal in which such proceedings are pending rather than in the context of the subpoena enforcement proceedings. *See, e.g.*, *Office of Thrift Supervision, Dep't of the Treasury v. Dobbs*, 931 F.2d 956, 959 (D.C. Cir. 1991) ("If information is wrongly obtained through an administrative subpoena and used in a subsequent civil or criminal proceeding, the subpoenaed party remains free to challenge the use of the information in the appeal from *that* proceeding." (emphasis in original)). *See also Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1518 n.8 (D.C. Cir. 1993) (commenting that subpoena enforcement proceeding "is not the proper occasion for challenge to a
(continued...)

Applying these holdings to the instant proceeding, we conclude that the Attorney General's investigative subpoena in the case *sub judice* is enforceable as to matters that are not encompassed by the Attorney General's pending civil action against the Petitioners. Insofar as the circuit court's order does not distinguish between those areas of investigation that remain subject to the Attorney General's investigative subpoena and those inquiries that relate to the complaint's allegations against the Petitioners, we reverse the circuit court's order enforcing the Attorney General's investigative subpoena *in toto*. We further remand this case to the circuit court for it to determine which portions, if any, of the investigative subpoena have been supplanted by the civil complaint against the Petitioners, and, as such, are thus subject to civil discovery in the pending enforcement proceedings.

---

[25](...continued)
hypothetical future abuse of process [resulting from use of subpoena to circumvent discovery in civil action]. Questions of suppression should not be considered until such time as the government seeks to use wrongfully obtained information." (citations omitted)). While this authority is informative, we find that the unusual posture of the case *sub judice* requires more definitive guidance regarding the manner in which an investigative subpoena may be enforced in associated judicial proceedings when the subpoena enforcement and the judicial proceedings are prosecuted simultaneously in a single proceeding.

### B. *Case Number 12-0546*

In Case Number 12-0546, the Petitioners contend that the circuit court erred by issuing and enforcing the temporary injunction enjoining them from collecting upon debts they acquired prior to their licensure as debt collectors in the State of West Virginia.

**1. Standard of review.** At issue in this appeal is the authority of the circuit court to issue and enforce a temporary injunction restraining the Petitioners from engaging in further alleged violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.*, during the pendency of the underlying enforcement proceedings. We previously have held that

> [i]n reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W. Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo. Syllabus Point 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

Syl. pt. 1, *State ex rel. McGraw v. Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792 (1996).

Guided by this standard, we proceed to consider the Petitioners' assignment of error.

**2. Validity and enforceability of temporary injunction.** Although they advance several different theories in support of their contentions, the sole error assigned by the Petitioners in this case concerns the validity and enforceability of the circuit court's temporary injunction enjoining them from collecting upon debts they acquired prior to their licensure in West Virginia as debt collectors. In the proceedings below, the Attorney General requested temporary relief in his complaint alleging that the Petitioners had violated the consumer protection laws of this State.

W. Va. Code § 46A-7-110 (1974) (Repl. Vol. 2006) specifically authorizes the Attorney General to seek temporary relief in conjunction with enforcement proceedings and provides that,

> [w]ith respect to an action brought to enjoin violations of this chapter or unconscionable agreements or fraudulent or unconscionable conduct, the attorney general may apply to the court for appropriate temporary relief against a respondent, pending final determination of the proceedings. If the court finds after a hearing held upon notice to the respondent that there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained, it may grant any temporary relief or restraining order it deems appropriate.

W. Va. Code § 46A-7-110. *See also* W. Va. Code § 46A-7-108 (1974) (Repl. Vol. 2006) (permitting Attorney General to "bring a civil action to restrain a person from violating this chapter"); W. Va. Code § 46A-7-109 (1996) (Repl. Vol. 2006) (authorizing Attorney General to bring civil action to restrain creditor from engaging in enumerated activities). Construing

31

this provision in accordance with the rules of statutory construction,[26] we find the language employed by the Legislature to be a clear expression of its intent to enable the Attorney General to prosecute violations of this State's consumer protection laws. Accordingly, we hold that once the Attorney General has instituted a civil action against a person or entity to enjoin unlawful conduct, the Attorney General may also seek temporary relief against the person or entity during the pendency of such proceedings in accordance with W. Va. Code § 46A-7-110 (1974) (Repl. Vol. 2006).

Having established the Attorney General's authority to seek the subject temporary injunction, we next must consider whether the circuit court properly issued and enforced it. We previously have held that

> [t]he method of analysis which governs the propriety and scope of an injunction under W. Va. Code 46A-7-110 (1974) deviates from the customary standard for the issuance of temporary relief[27] and may best be described as whether the

---

[26]*See, e.g.*, Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."); Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

[27]In cases not involving the specialized deference accorded to the Attorney General's request for temporary relief, we have held that

> [a] temporary injunction should be dissolved, where upon proper denial of the allegations of the bill on which it was granted, and in the absence of proof to sustain the bill, it appears

(continued...)

Attorney General has shown by the existence of some credible evidence, even if disputed, that reasonable cause exists to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained. The Attorney General need not prove the respondent has in fact violated the [applicable statutory law], but only needs to make a minimal evidentiary showing of good reason to believe that the essential elements of a violation of the [statute] are in view.

Syl. pt. 2, *State ex rel. McGraw v. Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792 (footnote added). We further have clarified that

[t]he statutory standard for issuing a preliminary injunction under *W. Va. Code*, 46A-7-110 [1974] – whether "there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct [prohibited by Chapter 46A]" – does not include the requirement that there first be proved a "pattern or practice" of violations of the statute.

Syl. pt. 4, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 582 S.E.2d 885 (2003). *See also* Syl. pt. 4, *Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792 ("Findings of 'material misrepresentation' or 'actually misleading' are not necessary predicates to support a temporary injunction under the West Virginia Consumer Credit [and Protection] Act, W. Va. Code 46A-7-110 (1974).").

---

[27](...continued)
from the record of the cause that no great hardship can come to the plaintiff by such dissolution, and that great and unnecessary damage may result to the defendant by continuing the same.

Syl. pt. 2, in part, *Leslie Co. v. Cosner Coal Co.*, 131 W. Va. 483, 48 S.E.2d 332 (1948).

Applying these holdings to the facts of the case *sub judice*, we find that the circuit court did not err in its issuance of the subject temporary injunction or in rendering its ruling upholding the same. In the proceedings below, the Attorney General amply demonstrated, "by the existence of some credible evidence, . . . that reasonable cause exists to believe that the [Petitioners are] engaging in or [are] likely to engage in conduct sought to be restrained."[28] By complaint filed June 3, 2010, the Attorney General asserted a cause of action against Petitioners SPV I, SPV II, and CI[29] by claiming that they were collecting debts without a license:

> Cavalry Investments [CI], SPV I, and SPV II have collected debts in West Virginia, directly and indirectly through others, by making collection calls, sending collection letters, reporting debts to credit bureaus, and filing collection law suits.
>
> The records of the West Virginia state tax department confirm that Cavalry Investments [CI], SPV I and SPV II do not have a license and surety bond to collect debts in West Virginia. . . .
>
> Cavalry Investments [CI], SPV I, and SPV II collected debts in West Virginia without a license and surety bond in violation of the Collection Agency Act and W. Va. Code § 46A-6-104.

Thereafter, by order entered October 7, 2011, the circuit court issued the subject temporary injunction specifically to "ENJOIN[] [Petitioners SPV I, SPV II, and CI] from engaging in

---

[28]Syl. pt. 2, in part, *State ex rel. McGraw v. Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792 (1996).

[29]The fourth Petitioner, CPS, was properly licensed at all times relevant to the instant proceedings. *See supra* note 8.

any actions to collect debts acquired prior to the date that they became licensed" as debt collectors in West Virginia. The record reflects that the three named Petitioners were not licensed at the time that the Attorney General filed the instant enforcement action on June 3, 2010, and that they did not become licensed until some time thereafter. SPV I eventually became licensed as a West Virginia debt collector on October 13, 2010; SPV II acquired its West Virginia debt collection license on October 12, 2010; and CI achieved licensure on October 7, 2010.

From this record evidence, we conclude that the Attorney General adequately established the existence of "reasonable cause" that the named Petitioners had collected debts in this State without a license sufficient to support the circuit court's issuance of a temporary injunction to restrain such alleged misconduct. *See* Syl. pt. 2, *Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792. The Attorney General was not required to prove that the named Petitioners actually had engaged in the alleged misconduct, but rather only that there exists reasonable evidence to believe such a violation has been committed. *See* Syl. pt. 4, *Telecheck Servs.*, 213 W. Va. 438, 582 S.E.2d 885; Syl. pt. 2, *Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792. Moreover, the relief granted by the circuit court was *temporary* in nature; it was not permanent. As such, the circuit court's issuance of the temporary injunction was designed to forestall the named Petitioners' alleged misconduct only during the pendency of the proceedings until the matter achieves its final resolution through either

the substantiation or disproof of the Attorney General's claims of the Petitioners' alleged statutory violations. Therefore, we conclude that the temporary injunction imposed upon the Petitioners herein was properly issued in compliance with this Court's prior holding in Syllabus point 2 of *State ex rel. McGraw v. Imperial Marketing*, 196 W. Va. 346, 472 S.E.2d 792 (1996). Accordingly, we affirm the circuit court's ruling in this regard.

## IV.

## CONCLUSION

For the foregoing reasons, in Case Number 11-1564, the October 7, 2011, order entered by the Circuit Court of Kanawha County is affirmed, in part, and reversed, in part, and this case is remanded for further proceedings consistent with this opinion. Furthermore, in Case Number 12-0546, the March 20, 2012, order entered by the Circuit Court of Kanawha County is affirmed.

Case Number 11-1564 – Affirmed, in part; Reversed, in part; and Remanded.

Case Number 12-0546 – Affirmed.

36